UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT EYLER,<br><br>    Plaintiff,<br><br>v.<br><br>LIZA LUV INVESTORS III LLC,<br><br>    Defendant. | Case No.  2:21-cv-1050<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Robert Eyler ("Plaintiff"), by and through his undersigned counsel, brings this action against Liza Luv Investors III LLC ("Defendant") and alleges as follows:

## INTRODUCTION

1.  For almost 30 years, the Americans with Disabilities Act ("ADA") has required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

2.  This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

3.  According to the 2019 J.D. Power North America Hotel Guest Satisfaction Index Study, the quality of sleep is the top variable determining guest satisfaction during a hotel stay.[1]

---

[1] Available at https://www.jdpower.com/business/press-releases/2019-north-america-hotel-guest-satisfaction-index-nagsi-study (Last accessed August 6, 2021).

1

4. However, many hotel operators, including Defendant, do not offer sleeping beds that are accessible to hotel patrons with disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

5. Liza Luv Investors III LLC owns and operates the SpringHill Suites located at 122 Daugherty Drive, Monroeville, PA (the "Subject Property").

6. In failing to provide guest rooms with accessible sleeping surfaces, Defendant has engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendant's hotel, and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages and accommodations that Defendant offers to the public.

7. Defendant's discrimination violated and continues to violate Title III of the ADA, and unless Defendant is required to change its policies and practices so that Defendant's goods, services, facilities, privileges, advantages and accommodations are accessible to individuals with disabilities, Plaintiff will continue to be denied full and equal access to Defendant's hotel and will be deterred from using Defendant's hotel.

8. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a) Defendant offer the required number of rooms with accessible sleeping surfaces at each of the hotels, consistent with the ADA's room dispersal requirements; and

b) Defendant change its policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities related to the provision of accessible sleeping services.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

9. The ADA was signed into law by President George H.W. Bush nearly thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

10. When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010), p. 138.[2]

11. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

---

[2] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf (Last accessed August 6, 2021).

12. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

13. The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

14. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

15. Both the 1991 Standards and the 2010 Standards require places of transient lodging, such as hotels, to provide a certain number of accessible sleeping rooms and suites, determined on a sliding scale based on the total number of guest rooms offered. 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

16. The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[3] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |
| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

---

[3] The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communication feature requirements, versus the 1991 Standards' "1 to 25".

*Id.*

17. In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

18. The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

19. The 2010 Standards are substantially similar, and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

20. The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

21. The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101-485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

22. The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

23. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

24. Aside from the 1991 and 2010 Standards, "[w]here the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADA's general nondiscrimination requirements and the ADA's overarching equal access mandate. These requirements include the obligation to make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services."[4]

---

[4] *See* Statement of Interest of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-10195 (ECF 57), attached hereto as Exhibit A. The attached Statement of Interest contains a more thorough discussion of how the United States views Defendant's obligation to provide accessible beds.

25. Consistent with the regulatory guidance discussed above, Defendant must not only offer accessible guest rooms that include accessible sleeping surfaces, but Defendant must also offer rooms with accessible sleeping surfaces, at an accessible height, that are dispersed among all of its room categories.

## JURISDICTION AND VENUE

26. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

27. Personal jurisdiction exists because Defendant owns, manages, and/or operates a hotel located in Allegheny County, Pennsylvania.

28. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) and (2) because this is the judicial district where Defendant resides and in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

29. Plaintiff Eyler, at all times relevant hereto, is and was a resident of Allegheny County, Pennsylvania.

30. Plaintiff is a wheelchair user who is limited in the major life activity of walking and is a member of the protected class under the ADA.

31. Defendant Liza Luv Investors III LLC is a Pennsylvania Limited Liability Company located at 122 Daugherty Drive, Monroeville, PA.

## FACTUAL ALLEGATIONS

32. Defendant owns, manages, and/or operates the subject property.

33. As a fundamental part of these operations, Defendant provides hotel rooms with sleeping beds to its customers.

34. In July of 2021, Plaintiff called the Subject Property and inquired about the height of the top surfaces of the beds in purportedly accessible rooms. He was told that top surface of the bed was 27 inches above the floor.

35. On Plaintiff's behalf, an investigator called the Subject Property to confirm this measurement. He was told that the surface height of the bed in a purportedly accessible room was 28.5 inches above the floor.

36. The seat height for Plaintiff's wheelchair is approximately 19 inches from the ground, and the average height of wheelchair seats generally is 18-20 inches.

37. The high sleeping surface of the bed in Defendant's purportedly accessible room renders it impossible for Plaintiff to independently transfer from his wheelchair to the bed.

38. Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, and lower passenger vehicle seats.

39. Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength, or be helped by a third party.

40. Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms in the Subject Property.

41. Defendant's policy and practice of not providing individuals with disabilities hotel rooms with accessible sleeping surfaces is discriminatory and in violation of the ADA.

42. Plaintiff would like to stay at the Subject Property in the future and use the hotel's sleeping beds.

43. However, the lack of accessible sleeping beds has deterred Plaintiff from staying at the Subject Property.

44. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accessible sleeping beds to persons with disabilities.

**CAUSE OF ACTION**
**For Violations of 42 U.S.C. §§ 12181,** *et seq.*

45. Plaintiff incorporates by reference each and every allegation herein.

46. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

47. Defendant provides public accommodations under the ADA. 42 U.S.C. § 12181(7).

48. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

49. Defendant owns and operates a hotel, or "place of lodging," that is a place of public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7).

50. Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use at the hotel it owns, manages and/or operates are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

51. Moreover, by failing to provide accessible beds or sleeping surfaces, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

      a)      denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at the Subject Property;

      b)      affording individuals with mobility disabilities unequal access to goods, services or facilities;

      c)      utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

      d)      failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

52. Defendant's ongoing and continuing violations of Title III have caused, and in the absence to an injunction will continue to cause, harm to the Plaintiff.

53. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a.    A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that Defendant's beds or sleeping surfaces were fully accessible to, and independently usable by, individuals with visual disabilities;

    b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its beds and sleeping

surfaces into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

    c.    Payment of nominal damages, as the Court deems proper;

    d.    Payment of costs and reasonable attorneys' fees as provided for by law; and

    e.    Such other additional or alternative relief as the Court finds just and proper.

Dated: August 6, 2021

Respectfully submitted,

*/s/ Nicholas A. Colella*
Nicholas A. Colella
R. Bruce Carlson
Ian Brown
ncolella@carlsonlynch.com
bcarlson@carlsonlynch.com
ibrown@carlsonlynch.com
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243